# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **In the Matter of:** ) | |
| ) | |
| **THOMAS MORRIS HACKNEY,** ) | |
| ) | |
| Debtor, ) | |
| ) | |
| **AMSOUTH BANK,** ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **Case No.:  2:06-CV-4619-VEH** |
| ) | |
| **MAX C. POPE, TRUSTEE;** ) | |
| **HAROLD RIDGEWAY; HARRY** ) | |
| **MCDOWELL; AVALON FINANCE** ) | |
| **LLC,** ) | |
| ) | |
| **Appellees**. ) | |

## MEMORANDUM OPINION

**I.    INTRODUCTION**

Pending before the court AmSouth Bank's ("AmSouth) Notice of Appeal (Doc. #1) relating to the bankruptcy court's order entered on September 28, 2006, denying AmSouth's Motion for Award of Administrative Priority (the "Denial Order").  For the reasons explained below, the bankruptcy court's Denial Order is due to be affirmed, and AmSouth's appeal is due to be dismissed.

## II.  STANDARD OF REVIEW

"In reviewing a bankruptcy court judgment as an appellate court, the district court reviews the bankruptcy court's legal conclusions *de novo*.  The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, and give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses."  *In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996).

A court's denial of an award attorneys' fees under 11 U.S.C. § 503(b) is a final order and normally is reviewed under an abuse of discretion standard.  *See In re Celotex Corp.*, 227 F.3d 1336, 1137-38 (11th Cir. 2000). "A bankruptcy judge abuses his discretion if he fails to apply the correct legal standard or his factual findings are clearly erroneous."  *Id.* at 1138.

## III.  RELEVANT BACKGROUND

### A.  Issue

The issue before this court is whether the bankruptcy court abused its discretion in determining that under 11 U.S.C. § 503, "fees and expenses incurred by a creditor in a prepetition prosecution of claims against the then non-debtor [are not] entitled to administrative expense priority after that non-debtor files a Chapter 7 bankruptcy case[.]"  (*See* Appeal File at Doc. #1 at 3).

### B.      Findings of Fact[1]

The facts necessary to decide this issue are not disputed.  AmSouth seeks an allowance of administrative expenses for $508,965.44, the priority part of the claim it filed in this case on November 12, 2004, and amended July 31, 2006.  *See* Claim No. 9.  That amount represents professional fees and litigation expenses incurred by the bank in a state court fraudulent conveyance action brought by AmSouth against the debtor and numerous alleged transferees from the debtor.  All of the work represented by the administrative expense claim was performed before the current bankruptcy case was filed.  After the debtor filed the pending Chapter 7 petition, [AmSouth's] lawsuit was removed to [the bankruptcy court], and the trustee was substituted as the plaintiff on June 1, 2005.  The trustee took control of the lawsuit and settled it for about five million dollars.  That settlement was approved by [the bankruptcy court] on August 11, 2005.  *See* <u>Order Granting Motion to Approve Compromise</u>, Proceeding No. 200.

## IV.   ANALYSIS

In conducting a *de novo* review of the Denial Order and in the absence of any

---

[1] Subject to only a few minor alterations, this court adopts the bankruptcy court's recitation of the facts set forth in its Denial Order. (*See* Appeal File at Doc. #1 at 3).  AmSouth's appeal does not challenge any of these underlying facts, but rather the legal conclusion reached by the bankruptcy court based upon them. (*See generally* Doc. #5).

binding precedent that bestows administrative status under circumstances similar to those under which AmSouth seeks such approval, the court concludes that the bankruptcy court did not commit an abuse of discretion in denying AmSouth's request for administrative expense treatment of its fees and expenses incurred in prosecuting a prepetition fraudulent transfer action against a debtor (and other third party transferees) that subsequently files a Chapter 7 bankruptcy case.

### A.     General Overview of § 503

Section 503 is the statute under which AmSouth seeks an allowance of administrative expenses. The relevant portions of § 503, as worded prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08, 119 Stat. 23, state:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--
>
>> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case; . . . .
>>
>> (2) compensation and reimbursement awarded under section 330(a) of this title;

(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–

>   (A) a creditor that files a petition under section 303 of this title;
>
>   (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor;
>
>   (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;
>
>   (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>
>   (E) a custodian superseded under section 543 of this title, and compensation for the services of such custodian; or
>
>   (F) a member of a committee appointed under section 1102 of this title, if such expenses are incurred in the performance of the duties of such committee;

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and

> the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant; . . . .

11 U.S.C. § 503.

The thrust of AmSouth's appeal is that the bankruptcy court erred in not reading § 503 more broadly to allow administrative treatment of its fees incurred prepetition in connection with AmSouth's prosecution of a fraudulent conveyance action in state court. (*See, e.g.*, Doc. #5 at 17 ("By intentionally leaving § 503(b) open-ended in terms of what types of items were eligible for allowance as an administrative expense, Congress plainly sought to bestow upon [bankruptcy [courts maximum flexibility for ensuring the burdens, not just the benefits, of the bankruptcy estate were equitably shared.") (footnote omitted)).  In support of its position that § 503 should be read expansively, AmSouth relies heavily upon *In re Colortex Industries, Inc.*, 19 F.3d 1371, 1377 (11th Cir. 1994), which is a Chapter 11 bankruptcy case in which the Eleventh Circuit acknowledged that "the use of the word 'including' [in § 503] is not intended to be limiting." *Id.*  In addition, however, the Eleventh Circuit recognized the need to balance the equally important doctrine that courts should narrowly construe § 503 priorities:

> Despite the expansiveness with which the administrative expense category may be treated, such judicial construction is limited by the

> countervailing doctrine that section 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors. *Otte v. United States*, 419 U.S. 43, 53, 95 S. Ct. 247, 254, 42 L. Ed. 2d 212 (1974). In determining how to best preserve the estate, two factors must be balanced: "maintaining the estate in as healthy a form as possible for the benefit of creditors while allowing essential costs of administering an ongoing business venture to be paid up front, thereby giving the debtor its best shot at emerging as a vital concern." *In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir.1988). Thus, a balance must be struck between the goal of maximizing the estate and the goal of encouraging on-going business with third parties to facilitate the continued operations of the business, and thus the reorganization. *Id.* at 706-07. That balance may never be struck to denigrate the clear intent of section 503(b)(1)(A) which is to satisfy the actual and necessary costs of preserving the estate. Although section 503(b) should be read narrowly to preserve the debtor's scarce resources, the ultimate goal of Chapter 11 is to marshall those resources to provide the best possible opportunity for a successful rehabilitation which will ultimately redound to the benefit of all creditors.

*In re Colortex*, 19 F.3d at 1377 (footnote omitted).

In an earlier Eleventh Circuit case, the court described the scope of § 503's categories as having "room in the statute for courts to accord administrative-expense priority to *postpetition* expenses, and courts have given this status to certain categories of *postpetition* claims that are not explicitly listed in the statute." *In re N.P. Mining Co.*, 963 F.2d 1449, 1952 (11th Cir. 1992). Later in this same case, the Eleventh Circuit describes § 503(b)'s treatment of postpetition expenditures or obligations: "The rationale for determining administrative-expense status is different, though. Section 503(b) begins with the *premise* that all the costs to be considered are

postpetition and *some* of them will receive administrative-expense priority." *In re N.P. Mining. Co., Inc.*, 963 F.2d at 1460. Accordingly, the *In re N.P. Mining* court did not include prepetition expenses within its description of § 503's reach. Similarly, in the case of *In re Alchar Hardware Co.*, 759 F.2d 867 (11th Cir. 1985), the Eleventh Circuit, quoting *In re Boogaart of Florida, Inc.*, 23 B.R. 157 (Bankr. S.D. Fla. 1982), observed in reference to a § 503(b)(1) claim that "only those obligations of a debtor's estate which are post-petition . . . are entitled to treatment as administrative expenses." *In re Alchar*, 759 F.2d at 868-69 (other citations omitted).

    Moreover, AmSouth's call for an expansive reading of § 503 is inconsistent with the plain language and context of the categories expressly recognized by Congress as administrative priorities. *See, e.g., Russell v. United States*, 464 U.S. 16, 23 (1983) ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'") (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)) (other citation omitted).[2] Additionally, AmSouth's novel approach is unsupported by even one (1)

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

materially similar reported Chapter 7 bankruptcy case.

> Regarding statutory interpretation of § 503, the Eleventh Circuit has stated:
>
> In interpreting a statute, we begin by examining the text and assigning the "plain, ordinary, and most natural meaning" to terms not otherwise defined in the text itself. *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir.1995). In applying the plain meaning of the text, other circuits have held that a substantial contribution is one that "'foster[s] and enhance[s], rather than retard[s] or interrupt[s] the progress of reorganization.'" *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir.1986) (quoting *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981)). *See also Lebron*, 27 F.3d at 944 (quoting *Consolidated Bancshares* ).

*In re Celotex Corp.*, 227 F.3d 1336, 1338 (11th Cir. 2000). Accordingly, this court uses plain meaning statutory assessment of § 503 in evaluating the merits of AmSouth's appeal.

### B. AmSouth's claim is not supported by § 503(b)(3)(B).

AmSouth argues in its brief that § 503(b)(3)(B) "most clearly mirrors the situation" presented by its administrative claim. (Doc. #5 at 25). Guided by the plain meaning rule adhered to by the Eleventh Circuit, the bankruptcy court did not abuse its discretion in determining that § 503(b)(3)(B) does not afford AmSouth a right to treat its prepetition litigation expenses as administrative ones because the provision conditions administrative treatment of expenses incurred relating to recovery of a debtor's property transferred or concealed upon a creditor's obtaining court approval

for the expenditures. Because the expenses incurred by AmSouth are all properly classified as prepetition ones, AmSouth is unable to satisfy this express condition precedent. Moreover, while some courts have recognized an exception to the preapproval process, *see, e.g.*, *In re Morad*, 328 B.R. 264, 271 (1st Cir. BAP 2005) ("We agree with those courts that require prior court approval, yet allow post facto approval under extraordinary circumstances because that is the rule in this circuit with respect to the employment of professionals by a trustee under § 327(a)."), the Eleventh Circuit has not adopted such a rule.

Furthermore, even in the First Circuit such a creditor must be able to satisfy extraordinary circumstances for the exception to the preapproval requirement to apply, which standard AmSouth has not demonstrated it meets. As explained under similar circumstances in *In re Morad*:

> Xifaras has made no showing of extraordinary circumstances; indeed, no such showing is possible in this case. The fraudulent conveyances action was commenced in 1997. It was a *fait accompli* by the time the bankruptcy case was commenced in 2002. At that point bankruptcy court oversight was impossible. The services for which compensation and reimbursement are sought are, if anything, part of Xifaras' pre-bankruptcy claim. The value received by the estate from those services cannot change that fact. For these reasons there is no error in the bankruptcy court's failure to grant *post facto* approval under § 503(b)(3)(B).

328 B.R. at 272. Similarly, AmSouth's fees and expenses are properly part of its pre-

bankruptcy claim.  As reasoned by the First Circuit Bankruptcy Panel:

> [T]he very essence of an administrative expense under § 503(b)(1)(A) is that it arises during the administration of an estate.  To allow otherwise would elevate ordinary pre-filing claims for goods and services to administrative expense status.  Services rendered prior to the existence of an estate, like the recovery by Xifaras in this instance, are not administrative services.

*In re Morad*, 328 B.R. at 271-72 (internal citations omitted).  Accordingly, the bankruptcy court did not abuse its discretion in concluding that § 503(b)(3)(B) provides no basis for AmSouth to seek an administrative priority.

    **C.    AmSouth's claim is not supported by § 503(b)(2)(D).**

Another provision that arguably supports AmSouth's administrative claim is § 503(b)(2)(D).  However, guided once again by the plain meaning rule adhered to by the Eleventh Circuit, the bankruptcy court similarly did not abuse its discretion in determining that § 503(b)(2)(D) does not afford AmSouth a right to request that its prepetition litigation expenses should be classified as administrative ones because this bankruptcy case was filed under Chapter 7 and never arose "under Chapter 9 or 11[.]"  Accordingly, whether AmSouth made a substantial contribution to the estate is immaterial to the analysis because, as several courts have determined, a § 503(b)(2)(D) administrative claim is not afforded under Chapter 7 bankruptcy cases. *See In re Morad*, 328 B.R. at 272 ("To meet the burden of establishing this qualifying

event for an award of legal fees and costs under § 503(b)(4), Xifaras must show that she made a substantial contribution in Morad's chapter 11 case."); *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 945 (3d Cir. 1994) ("Where, as here, a chapter 11 proceeding is converted into a chapter 7 proceeding, we do not see how expenses incurred after the conversion can be said to have made a substantial contribution in the proceedings under chapter 11.  There are provisions of § 503 other than subsection (b)(3)(D) that authorize reimbursement of expenses incurred in connection with a chapter 7 proceeding, and we believe that post-conversion expenses were intended to be reimbursable under those provisions or not at all. *See, e.g.*, §§ 503(b)(3)(B) and (C).").  Accordingly, the substantial contribution category is unavailable to AmSouth either expressly  because it is limited to Chapter 9 and 11 proceedings (which AmSouth acknowledged below)[3] or implicitly under Chapter 7 as Congress did not include Chapter 7 within its purview.

### D. AmSouth's claim is not supported by any analogous, much less any binding, case law.

AmSouth also argues that regardless of whether a specifically delineated

---

[3]*See* Supplemental Brief of AmSouth Bank in Support of Motion for Administrative Priority, Doc. #11 of Appellant's Designation at 2 ("By its express terms of § 503(b)(3)(D) is limited to only cases under Chapters 9 and 11 of the Bankruptcy Code.  Consequently, AmSouth cannot represent to the Court that § 503(b)(3)(D) would apply to the Motion now at bar.").

category applies to its circumstances, the bankruptcy court should have carved one out because it has the power to do so under the Bankruptcy Code.  However, even assuming arguendo that such an exercise of authority is appropriate, a court's mere ability to order requested relief does not ripen into an abuse of discretion when that same judicial body reasonably and articulately explains its reasoning for declining the movant's invitation.

Moreover, AmSouth is unable to demonstrate any analogous, much less binding, case law that supports its request.  For example, a reported Chapter 7 bankruptcy case that AmSouth refers this court to as "a situation substantially similar" is *In re Zedda*, 169 B.R. 605 (Bnkrty. E.D. La. 1994).  (Doc. #5 at 18). However, *In re Zedda* is significantly distinguishable from AmSouth's claim because, as noted by that court, "[t]he movers, however, are not seeking compensation for any prepetition work," and in sharp contrast, recovery for prepetition work is all that AmSouth is seeking.  *Id.* at 607.  Akin to *In re Zedda*, none of the other cases relied upon by AmSouth addresses a creditor's attempt to obtain administrative status pertaining to prepetition legal work.  (Doc. #5 at 20).  *See In re Antar*, 122 B.R. 788, 790 (Bkrtcy. S. D. Fla. 1990) (administrative reimbursement of legal fees associated with adversary complaint contesting discharge); *In re George*, 23 B.R. 686, 687 (Bkrtcy. S.D. Fla. 1982) ("[A] creditor's reasonable expense incident to opposing a

discharge or revoking a discharge, opposing claimed exemptions, resisting claims or performing other similar services benefitting the estate, may be allowed as an administrative expense."); *In re Rumpza*, 54 B.R. 107, 108 (Bkrtcy. S.D. 1985) (administrative reimbursement of legal fees related to activities conducted post-filing of Chapter 7 petition). Accordingly, the bankruptcy court did not err when it issued its Denial Order and declined to create an administrative expense category pursuant to § 503 that would fit AmSouth's particular prepetition Chapter 7 circumstances.

**V. CONCLUSION**

In sum, the bankruptcy court did not commit legal error in denying AmSouth's request for administrative treatment of its claim under § 503. AmSouth's prepetition claim does not fit expressly within any of the enumerated categories of administrative expenses set forth in § 503. Moreover, the creation of a rule that would elevate AmSouth's claim to administrative status would be inconsistent with the plain meaning and context of § 503(b)'s interrelated subparts and would be rendered without any prior reported analogous legal authority under Chapter 7, binding or otherwise.

Accordingly, the bankruptcy court's Denial Order is due to be affirmed, and

AmSouth's appeal is due to be dismiss.  The court will enter an order that is consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this 5th day of January, 2007.

_____
**VIRGINIA EMERSON HOPKINS**
**United States District Judge**